UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:22-cr-165-MOC |
| | ) | |
| v. | ) | **BILL OF INDICTMENT** |
| | ) | |
| SUDIPTA MAZUMDER | ) | 18 U.S.C. § 1347 |
| | ) | 18 U.S.C. § 1035 |

**THE GRAND JURY CHARGES**:

At the specified time and at all relevant times:

### Introduction

1. During 2019 and 2020, the Defendant, SUDIPTA MAZUMDER, was a doctor in Charlotte, North Carolina who worked for a telemedicine company and submitted thousands of claims to Medicare and TRICARE for medically unnecessary orthopedic braces. Generally, MAZUMDER falsely stated that she performed medical examinations and falsely certified that the braces were medically necessary, including a claim that a knee brace was medically necessary for an amputee. Through this scheme, MAZUMDER caused the submission of approximately $10,927,439 in false and fraudulent claims to Medicare and approximately $509,434 in false and fraudulent claims to TRICARE. MAZUMDER usually spent mere minutes on each order and received a per-consultation fee from the telemedicine company.

### The Medicare and TRICARE Programs

2. The Medicare program was a federal health care program providing benefits to individuals who were the age of 65 or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. The benefits available under Medicare were governed by federal statutes and regulations. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

3. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f), and affected interstate commerce.

4. Medicare was divided into four parts which helped cover specific services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

1

5. Specifically, Medicare Part B covered medically necessary physician office services and outpatient care, including the ordering of durable medical equipment, prosthetics, orthotics, and supplies ("DME") that were ordered by licensed medical doctors and other qualified health care providers.

6. Physicians, clinics, laboratories, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

7. To receive Medicare reimbursement, providers had to fill out an application and execute a written provider agreement, known as CMS Form 855. The Medicare application was required to be signed by an authorized representative of the provider. The application contained certifications that the provider agreed to abide by the Medicare laws and regulations, and that the provider "[would] not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [would] not submit claims with deliberate ignorance or reckless disregard of their truth or falsity." Medicare providers were given access to Medicare manuals and service bulletins describing procedures, rules, and regulations.

8. CMS contracted with various companies to receive, adjudicate, process, and pay Part B claims, including claims for braces. CMS also contracted with the Unified Program Integrity Contractor ("UPIC") which was a contractor who investigated healthcare fraud, waste, and abuse. As part of an investigation, the UPIC could conduct a clinical review of records to ensure that payment was made only for services that met all Medicare coverage and medical necessity requirements.

9. TRICARE was a federal health insurance program of the United States Department of Defense ("DOD") Military Health System that provided coverage for DOD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and their survivors. The Defense Health Agency ("DHA"), an agency of the DOD, was the governmental entity responsible for overseeing and administering the TRICARE program.

10. TRICARE was a "health care benefit program," as defined by 18 U.S.C. § 24(b), and a "federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), and affected interstate commerce. TRICARE offered health insurance benefits for medically necessary DME that were prescribed by a licensed medical professional.

11. TRICARE reimbursed providers based on payment rates from applicable fee and rates schedules. Generally, when a beneficiary was eligible for Medicare and TRICARE, TRICARE was secondary to Medicare.

## **Durable Medical Equipment**

12. Medicare covered an individual's access to DME, such as off-the-shelf ("OTS") ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces. OTS braces required minimal self-adjustment for appropriate use and did not require expertise in trimming, bending, molding, assembling, and customizing to fit the individual.

2

13. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment and diagnosis of the beneficiary's illness and injury and prescribed by a licensed physician. In claims submitted to Medicare for the reimbursement of provided DME, providers were required to set forth, among other information: (a) the beneficiary's name and unique Medicare identification number, (b) the equipment provided to the beneficiary, (c) the date the equipment was provided, (d) the cost of the equipment, and (e) the name and provider number of the provider who prescribed and ordered the equipment. To be reimbursed from Medicare for DME, the claim had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.

14. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. For certain DME products, Medicare promulgated additional requirements that a DME order was required to meet for an order to be considered "reasonable and necessary." For example, for OTS knee braces billed to Medicare under the Healthcare Common Procedures Coding System ("HCPCS") Code L1851, an order would be deemed "not reasonable and necessary" and reimbursement would be denied unless the ordering/referring physician documented the beneficiary's knee instability using an objective description of joint laxity determined through a physical examination of the beneficiary.

## Telemedicine

15. Telemedicine provided a means of connecting patients to doctors by using telecommunications technology to allow the doctors to interact with the patients.

16. Legitimate telemedicine companies provided telemedicine services to individuals by hiring doctors and other health care providers. Such telemedicine companies typically paid doctors a fee to conduct consultations with patients. In order to generate revenue, such telemedicine companies typically either billed insurance, including Medicare and TRICARE, or received payment directly from patients who utilized the services of the telemedicine company.

17. Medicare Part B covered expenses for specified telemedicine services if certain requirements were met. These requirements included, but were not limited to, that (a) the beneficiary was located in a rural or health professional shortage area; (b) the services were delivered via a two-way, real-time interactive audio and video telecommunications system; and (c) the beneficiary was at a practitioner's office or a specified medical facility—not at a beneficiary's home—during the telemedicine consultation with a remote practitioner.

## The Defendant and Related Entities

18. MAZUMDER, a resident of Charlotte, North Carolina, was a medical doctor licensed to practice medicine in North Carolina. In 2015, MAZUMDER applied for and obtained a Medicare provider number, and in doing so, agreed to abide by all the terms, rules, and regulations of Medicare. MAZUMDER had full-time employment and also worked as an independent contractor for Company 1.

3

19. Company 1 was a Delaware for-profit corporation registered on or about November 20, 2001. Company 1 operated as a purported telemedicine company.

20. W.S. was a Medicare and TRICARE beneficiary residing in Fayetteville, North Carolina.

21. R.K. was a Medicare and TRICARE beneficiary residing in China Grove, North Carolina.

22. W.T. was a Medicare and TRICARE beneficiary residing in Charlotte, North Carolina.

23. B.W. was a Medicare and TRICARE beneficiary residing in Middlesex, North Carolina.

24. A.W. was a Medicare and TRICARE beneficiary residing in Middlesex, North Carolina.

25. G.M. was a Medicare and TRICARE beneficiary residing in Raeford, North Carolina.

## COUNT ONE
## 18 U.S.C. § 1347
### (Health Care Fraud)

26. Paragraphs 1 through 25 of this Bill of Indictment are re-alleged and incorporated by reference as though fully set forth herein.

27. From in or around January 26, 2019, and continuing through on or around May 29, 2020, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant,

**SUDIPTA MAZUMDER**

did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare and TRICARE, federal health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services.

28. The scheme and artifice to defraud is more fully described in Paragraphs 29 to 38 of this Indictment and is incorporated by reference as if fully set forth herein.

4

## Purpose of the Scheme and Artifice

29. It was a purpose of the scheme and artifice to defraud for MAZUMDER and others known and unknown to unlawfully enrich themselves by: (a) submitting and causing the submission of false and fraudulent claims to Medicare for DME that were: (i) medically unnecessary, (ii) not eligible for Medicare reimbursement, and (iii) not provided as represented; (b) concealing the submission of false and fraudulent claims; and (c) diverting proceeds of the fraud for her personal use and benefit.

## Manner and Means of the Scheme

30. The manner and means by which MAZUMDER and others known and unknown sought to accomplish the purpose of the scheme included, among other things, the following:

31. On or about March 27, 2015, MAZUMDER certified to Medicare that she would comply with all Medicare rules and regulations. For all times during the charged period, MAZUMDER was a Medicare provider and was required to abide by all Medicare rules and regulations and federal laws, including that she would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare. Despite this certification, MAZUMDER proceeded to present and cause to be presented false and fraudulent claims for payment by Medicare as described below.

32. MAZUMDER worked with Company 1 as an independent contractor to sign doctors' orders for DME and to provide few, if any, medical treatment options for patients beside braces during the purported telemedicine consultations.

33. MAZUMDER received unsigned orders for DME and Medicare beneficiary information for thousands of Medicare beneficiaries from Company 1 in order to sign brace orders for those beneficiaries.

34. MAZUMDER electronically signed doctors' orders for DME for Medicare and TRICARE beneficiaries, including for beneficiaries located in the Western District of North Carolina, without seeing, speaking to, and otherwise communicating with and examining them; and without regard to whether the beneficiaries needed the DME. These orders, as MAZUMDER knew, were not medically necessary and were not the product of a doctor-patient relationship and examination.

35. MAZUMDER did not bill Medicare for the purported telemedicine consultations with the beneficiaries. Instead, MAZUMDER was paid approximately $20 per consultation by Company 1.

36. MAZUMDER used her bank accounts ending in *0440 and *6569 for the purpose of, among other things, receiving payments from Company 1 in exchange for signing doctors' orders for DME.

37. MAZUMDER and others known and unknown concealed and disguised the scheme by preparing and causing to be prepared false and fraudulent documentation, including documentation in patient files and brace orders in which MAZUMDER falsely stated that:

5

a. she determined through her interaction with the beneficiary that a particular course of treatment, including the prescription of braces, was reasonable and medically necessary, when in truth and in fact, she had little to no interaction with the beneficiary and had made no determination of whether such treatment was reasonable or medically necessary;

b. she completed an objective assessment and evaluation of the patient, including performing certain diagnostic tests that required touching and manipulation of the actual beneficiary, before ordering DME orthotics, when in truth and in fact, her interaction with beneficiaries, if any, was brief and telephonic; and

c. the information contained in patient medical records was true, accurate, and complete, when in truth and in fact, the information was false, inaccurate, and incomplete.

38. From in or around January 26, 2019, through in or around May 29, 2020, MAZUMDER submitted and caused the submission of approximately $10,927,439 in false and fraudulent claims to Medicare and approximately $509,434 in false and fraudulent claims to TRICARE for DME orders that were ineligible for reimbursement because the DME was not medically necessary and not provided as represented.

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS TWO THROUGH SEVEN
## 18 U.S.C. § 1035
## (False Statements Relating to Health Care Matters)

39. Paragraphs 1 through 25 of this Bill of Indictment are re-alleged and incorporated by reference as though fully set forth herein.

40. On or about the dates set forth below, within the Western District of North Carolina and elsewhere, the defendant,

### SUDIPTA MAZUMDER

aided and abetted by others known and unknown to the Grand Jury, in a matter involving federal health care benefit programs as defined in 18 U.S.C. § 24(b), specifically Medicare and TRICARE, did knowingly and willfully (a) falsify, conceal, and cover up by trick, scheme and device material facts, and (b) make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, in that she prepared and signed medical records and DME orders in which she (a) falsely certified that she determined through her interaction with the beneficiary, as set forth below, that a particular course of treatment, including the prescription of braces, was reasonable and medically necessary; (b) falsely stated that she completed an objective assessment and evaluation of the patient, including performing certain diagnostic tests that required touching and manipulation of the actual beneficiary, before ordering DME orthotics, thereby concealing the fact that her interaction with beneficiaries, if any, was brief and telephonic; and (c) falsely attested that the information contained in patient medical records

6

was true, accurate, and complete, with each claim MAZUMDER caused to be submitted, supported by a falsified patient medical record or records, forming a separate count:

| Count | Beneficiary | Approximate Date | Record Containing False Statements and Concealment of Material Facts |
|---|---|---|---|
| TWO | W.S. | March 15, 2019 | Medical records and detailed written orders for ankle brace, knee brace, shoulder brace, wrist brace, and back brace |
| THREE | R.K. | January 22, 2020 | Medical records and detailed written order for back brace |
| FOUR | W.T. | March 23, 2020 | Medical records and detailed written orders for knee braces |
| FIVE | B.W. | April 30, 2020 | Medical records and detailed written orders for wrist brace and back brace |
| SIX | A.W. | April 30, 2020 | Medical records and detailed written order for knee brace |
| SEVEN | G.M. | April 30, 2020 | Medical records and detailed written orders for knee brace and back brace |

All in violation of Title 18, United States Code, Sections 1035(a) and 2.

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under § 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by § 981(a)(1)(C). The following property so subject to forfeiture in accordance with sections 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Indictment; and

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant to the extent of the value of the property described in (a).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds stated above: a forfeiture money judgment for all currency and monetary instruments that were involved in the crimes alleged in this Bill of Indictment, including but not limited to the sum of approximately $77,260.

A TRUE BILL

GRAND JURY FOREPERSON

DENA J. KING
UNITED STATES ATTORNEY

GRAHAM R. BILLINGS
ASSISTANT UNITED STATES ATTORNEY

8

Case 3:22-cr-00165-MOC-DCK   Document 1   Filed 06/22/22   Page 8 of 8