UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-CR-165-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SUDIPTA MAZUMDER, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's motion for a judgment of acquittal and, in the alternative, for a new trial. (Doc. No. 97). The Government opposes Defendant's motion. (Doc. No. 104). The Court heard argument in December 2023, and this matter is now ripe for disposition.

**I.     Background**

In June 2022, the Government indicted Dr. Sudipta Mazumder on one count of health care fraud (18 U.S.C. § 1347) and six counts of false statements relating to health care matters (18 U.S.C. § 1035). (Doc. No. 1). Dr. Mazumder pled not guilty at her arraignment the next month. The Government later entered a superseding bill of indictment alleging an additional count of health care fraud. (Doc. No. 15). At trial, the jury found Defendant not guilty as to the two fraud counts, and guilty on all six false statements counts. (Doc. No. 92).

Each count on which Dr. Mazumder was convicted involved false statements related to detailed written orders for orthosis. Each order—and thus each count—is associated with a specific patient-beneficiary. The first page of each order included a statement of medical necessity, signed by Dr. Mazumder. That statement reads:

> I certify that the patient has the medical condition(s) listed and is being treated by me. All the information contained on this physician's order accurately reflects the patient's medical condition(s) and is medically necessary with reference to the standards of medical practice for this patient's condition(s). The medical records for this patient substantiate the prescribed treatment plan.

(Doc. No. 98). Dr. Mazumder also signed the second page of each order, under a section titled "Prescriber Information." (Id.).

## II. Legal Standard

Defendant moves the Court to enter a judgment of acquittal or, in the alternative, for a new trial. Federal Rule of Criminal Procedure 29 governs motions for acquittal, whereas Rule 33 governs motions for new trial.

Rule 29 requires the district court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). Ruling on a motion for acquittal, the Court must assess whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The Court must view the evidence in the light most favorable to the government and must not weigh the evidence or review the credibility of witnesses for itself. Id.; United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). A Rule 29 motion is thus granted only where no rational jury could have found the essential elements of the crime beyond a reasonable doubt, such that acquittal is "the only proper verdict." United States v. Rafiekian, 68 F.4th 177, 186 (4th Cir. 2023) (emphasis in original and citation omitted). Defendant acknowledges that Rule 29 imposes a heavy burden. (Doc. No. 98 at 7).

Rule 33, by contrast, permits the district court to vacate judgment and grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33. In the Fourth Circuit, trial courts will grant a Rule 33 motion in two circumstances: (1) "when the verdict is against the great weight of

2

Case 3:22-cr-00165-MOC-DCK   Document 110   Filed 01/23/24   Page 2 of 18

the evidence" and (2) "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." United States v. Garcia, 855 F.3d 615, 620 (4th Cir. 2017); Rafiekian, 68 F.4th at 186. Additionally, where the Court grants a Rule 29 motion and enters a judgment of acquittal, it must also conditionally decide whether a new trial should be granted under Rule 33 if the judgment of acquittal is later vacated or reversed. (Doc. No. 98 at 8).

**III. Analysis**

**a. Motion for Acquittal**

Defendant was convicted on six counts of false statements relating to health care matters under 18 U.S.C. § 1035(a). To prove a violation of that statute, the Government must show beyond a reasonable doubt that the defendant (1) knowingly and willfully (2) made a materially false or fraudulent statement (3) in connection with the delivery of or payment for health care benefits, items, or services. See United States v. McLean, 715 F.3d 129, 140 (4th Cir. 2013). Defendant's motion focuses on the first and second prongs of the Section 1035(a) analysis.

**i. Knowledge**

To satisfy the first element of Section 1035(a), the Government must show that the defendant acted knowingly and willfully. A person acts knowingly if they act with "knowledge of the facts that constitute the offense." Dixon v. United States, 548 U.S. 1, 5 (2006). A person acts willfully if they act purposefully and with the intent to do something the law forbids. Bryan v. United States, 524 U.S. 184, 190 (1998). Good faith is a complete defense to a crime with a mens rea of willfulness. United States v. Hamaker, 455 F.3d 1316, 1326 (4th Cir. 2006); United States v. Hirschfeld, 964 F.2d 318, 322 (4th Cir. 1992).

Defendant contends that the Government failed to show that Dr. Mazumder received any evidence contradictory to statements contained in the Orders she signed. Therefore, Defendant

3

argues, the Government failed to prove knowledge: absent evidence that Dr. Mazumder had access to contradictory information, no rational jury could find that she <u>knew</u> the prescribed treatments were medically unnecessary. Defendant's expert testified that physicians are trained to rely on the accuracy of medical records in good faith and that such reliance is approved by the North Carolina Medical Board's Position Statements. (Doc. No. 98 Ex. D at 74).

The Government identifies several reasons why a rational jury might reject Dr. Mazumder's good faith defense. First, the jury heard testimony from a DocuSign employee to the effect that Defendant had the opportunity to review the orders before signing them. Thus, Dr. Mazumder had the opportunity to see that she—not another doctor referenced in the order—was the provider whose name and signature certified that the orthotics were medically necessary, that she had a prescriber-patient relationship with the patient-beneficiary, and that her practice conformed with the law. A rational jury could easily conclude that Defendant signed the orders despite knowing that she had not satisfied these criteria. Second, the Government showed that Defendant sometimes signed large numbers of orders in a short time. From this evidence, a rational jury could conclude that Defendant signed the orders without reviewing them, willfully blinding herself to any false representations contained therein. Taking the evidence in the light most favorable to the Government, Defendant fails to show that no rational jury could have concluded that Defendant acted knowingly.

Defendant further claims that the Government failed to prove willfulness. Specifically, Defendant argues that questions Dr. Mazumder posed to Mr. Lendaro at Barton & Associates, and Ms. Floyd at 1st Care, indicate that she did not intend to break the law. (Doc. No. 98 Ex. D at 161–63, 168–69; Ex. C at 269, 272, 283–84, 286). But the Government points out that these communications could also support a finding of willfulness. Despite apparent concerns regarding

4

the legality of her and her employer's conduct, Defendant continued to sign large numbers of orders without further investigation for over a year. A rational jury could take Dr. Mazumder's perseverance in the face of suspicion that her conduct might be illegal (Doc. No. 104 at 8; Gov't Ex. 94) as evidence that Dr. Mazumder acted with intent to break the law.

The Government also showed that Defendant's Medicare enrollment form included an explanation of 18 U.S.C. § 1035. From this, as well as Defendant's education, training, and work experience, a rational jury could conclude that Defendant knew it was unlawful to intentionally make false statements in support of Medicare claims. And based on the overall volume of orders, the number of orders per beneficiary, and the errors and boilerplate language in pre-populated orders, a rational jury could conclude that Defendant acted with the intent to make false statements to Medicaid. The Government further notes that Defendant concealed her telemedicine work from Atrium (her employer), the North Carolina Medical Board, and Medicare, which a rational jury could deem probative of her knowledge and willfulness.

True, Defendant offers plausible explanations for Dr. Mazumder's conduct which differ from those advanced by the Government. And if accepted, those plausible explanations could support a rational jury's finding that Defendant did not intentionally break the law. But that is not enough to satisfy the Rule 29 standard. Instead, Defendant must show that no rational jury could credit the Government's evidence of Dr. Mazumder's mental state over Defendant's evidence. That is not the case here.

Finally, Defendant claims that the jury's not guilty verdict on Count One (fraud) indicates that the Government failed to prove that Dr. Mazumder knew that false statements were practically certain to follow from her act of signing the orders. (Doc. No. 98 at 23). Defendant misunderstands the verdict. By reaching a verdict of not guilty on Count One, the jury merely

5

Case 3:22-cr-00165-MOC-DCK   Document 110   Filed 01/23/24   Page 5 of 18

concluded that Dr. Mazumder lacked the intent herself to defraud Medicare. That finding is not inconsistent with the jury's conclusion, on Counts Two through Seven, that Dr. Mazumder willfully signed orders that she knew contained false statements. If those findings were inconsistent—i.e., if a jury could not acquit a defendant of health care fraud but convict on false statements—then 18 U.S.C. § 1035 would be superfluous in view of 18 U.S.C. § 1347.

### ii. Material Falsity

A defendant makes a materially false or fraudulent statement where they (1) falsify, conceal, or cover up by any trick, scheme, or device a material fact; or (2) make any materially false, fictitious, or fraudulent statements or representations, or make or use any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry. 18 U.S.C. § 1035(a)(1)–(2). "[A] statement is material . . . if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." United States v. Cunningham, 554 F. App'x 126, 127 (4th Cir. 2014) (quoting United States v. Hamilton, 699 F.3d 356, 362 (4th Cir. 2012)). Dr. Mazumder's statements need not have been submitted to Medicare to be material, so long as they tended to influence or were capable of influencing Medicare's claims processing apparatus ("CMS").

#### 1. Statements by Dr. Mazumder

Defendant argues that statements made personally by Dr. Mazumder were not false. Specifically, Defendant maintains that it was "literally true and factually correct" for Dr. Mazumder to state that (1) she established a valid prescriber-patient relationship with each patient; (2) each patient was "being treated by" her; (3) the orders were medically necessary; and (4) the medical records for each patient substantiated the prescribed treatment plan. (Doc. No. 98 at 10).

6

As to the first class of statements, Defendant acknowledges that Medicare rules and regulations dictate that a valid prescriber-patient relationship for orthotic braces requires a face-to-face consultation. (Doc. No. 98 at 11). But Defendant points out the that the relevant portion of the orders signed by Dr. Mazumder states that "I am aware of and my practice conforms with applicable State laws as they relate to requirements for establishing a valid prescriber-patient relationship." (Id.). Defendant's expert, Dr. Weil, testified that relevant sections of Position Statements established by the North Carolina Medical Board permit "a physician to make a diagnosis and issue a prescription, even if he or she has not seen the patient, so long as he or she is aware of a telemedicine encounter and the associated documentation reaches the threshold information to make an accurate diagnosis." (Doc. No. 98 Ex. D at 76–77). Thus, Dr. Weil testified, "Dr. Mazumder established a valid prescriber-patient relationship in accordance with local guidelines." (Id. at 95). Indeed, Defendant never specifically "certified or attested that she established a valid prescriber-patient relationship under Medicare rules and regulations." (Doc. No. 98 at 13).

Setting aside Defendant's tendentious reading of the relevant Position Statements (which apply to prescription drugs, not durable medical equipment), the jury had sufficient evidence to convict for at least two reasons. First, two patient-beneficiaries (Mr. Karriker and Mr. Stephenson) testified that they did not have a prescriber-patient relationship with Dr. Mazumder. (Doc. No. 104 at 14). The jury was entitled to rely on their testimony. Second, each of the orders Defendant signed stated on their face the type of orthotic being ordered, and that the patient-beneficiaries' insurance provider was Medicare. The Government's expert, Stephen Quindoza, testified that CMS tends to rely on written orders of the kind signed by Dr. Mazumder. (Doc. No. 104 at 6, 15 n.5). Mr. Quindoza further testified that, under the Medicare rules, a statement by a

7

non-treating provider that they have a prescriber-patient relationship with a beneficiary they have never physically examined is materially false. It was not irrational for the jury to reject Defendant's argument that the Medicare rules can be disregarded in favor of non-binding state licensing board guidelines. The same goes for Defendant's claim that she was unaware that the orders would be submitted to CMS. A rational jury could credit Mr. Quindoza's testimony over the defense expert's in concluding that Dr. Mazumder's claim to have a prescriber-patient relationship with the patient-beneficiaries was materially false in violation of 18 U.S.C. § 1035(a).

Next, Defendant argues that Dr. Mazumder's claim to have "treated" each patient-beneficiary was not materially false. Defendant's expert, Dr. Weil, testified that by issuing an order or prescription Dr. Mazumder "treated" each patient-beneficiary. (Doc. No. 98 Ex. D at 75, 85). But several patient-beneficiaries testified to the jury that Dr. Mazumder never treated them. (Doc. No. 98 Ex. A at 216–17, 221; Ex. B at 117–18). A factfinder could rationally credit the evidence establishing that Defendant never saw or treated any of the patient-beneficiaries over Dr. Weil's testimony. (Doc. No. 104 at 16). Put otherwise, the jury was not <u>required</u> to accept Dr. Weil's testimony that Dr. Mazumder technically "treated" each patient-beneficiary. A rational jury could find that Dr. Mazumder's claim to have treated each of the patient-beneficiaries was materially false.

Defendant also contends the Government failed to establish that the prescribed orthotics were not medically necessary. Consequently, Defendant argues, the Government failed to establish that Dr. Mazumder's conclusion that the orthotics <u>were</u> medically necessary was materially false. (Doc. No. 98 at 14). To this end, Defendant highlights inconsistencies in patients' testimony. Two patients, who testified that they did not want or need the orthotics

8

prescribed by Dr. Mazumder, later admitted that they suffered pain and stiffness in the body parts supported by the orthotics. (Id. at 14–15). Defendant additionally emphasizes Dr. Weil's testimony that there was sufficient information in the orders for Dr. Mazumder "to come to a decision on medical necessity based upon the information provided." (Id. Ex. D at 91). Finally, Defendant notes that only one Government witness—Special Agent Kilpatrick—testified to the absence of medical necessity. (Id. at 16). Because SA Kilpatrick is not a doctor, Defendant argues, no rational jury could credit her un-qualified testimony over that of Dr. Weil. (Id.).

Defendant's medical necessity argument crumples under Rule 29's heavy burden. The Rule 29 inquiry prohibits the Court from weighing the evidence or credibility of witnesses for itself. Jackson, 443 U.S. at 319; Wilson, 118 F.3d at 234. Because a rational jury could credit the testimony of patient-beneficiaries and SA Kilpatrick over that of Dr. Weil, (Doc. No. 104 at 17), Defendant's argument regarding Dr. Weil's credentials falls on deaf ears. Likewise, a rational jury could rely on the Docusign timestamps to reject Dr. Mazumder's chart review defense entirely, concluding that Defendant exercised no medical judgment whatsoever in approving the orders. (Id.). Even accepting the chart review defense, a rational jury could conclude that the orders themselves (replete with errors and boilerplate language) were so suspicious that no doctor would rely on them. (Id.).

Finally, Defendant claims that Dr. Mazumder truthfully stated that each patient's medical records "substantiated the prescribed treatment plan." Dr. Weil testified that (1) doctors are trained to rely on information contained in medical records, (2) doctors may rely on another physicians' medical records to treat a patient via telemedicine, and (3) the SOAP notes before Dr. Mazumder contained information sufficient to inform her decision as to medical necessity. (Doc. No. 98 Ex. D at 86–87, 73–74, 91). Defendant's argument again falls short. The jury heard

9

evidence that the orders before Dr. Mazumder—even if they constitute medical records substantiating the prescribed treatment plan—were full of errors and boilerplate. A rational jury could reject Dr. Weil's testimony and conclude that the orders were designed to shield fraudulent Medicare claims. Thus, a rational jury could reasonably find that Defendant falsely represented that the orders substantiated the prescribed treatment plan. (Doc. No. 104 at 18).

**2. Statements Made by the Intake Representative**

Next, Defendant argues that no rational jury could find that statements made by the intake representative in orders signed by Dr. Mazumder were false. Specifically, Defendant asserts that the Government offered insufficient evidence to show falsity of five pre-filled statements: (1) the patient inquired about orthotic braces; (2) the patient had the medical condition(s) listed in the order; (3) the patient was assessed by the treating physician; (4) the prescribed treatment was explained to the patient and the patient was provided a telephone number to schedule a follow-up brace evaluation; and (5) objective tests were performed on patients who were prescribed knee braces. (Doc. No. 98 at 19–21). Defendant supports her argument by highlighting "conflicting" evidence regarding the truth or falsity of the statements. But, as the Government notes, the existence of conflicting evidence is insufficient to prevail on a Rule 29 motion. (Doc. No. 104 at 19). The jury heard enough evidence to rationally conclude that the pre-filled statements were false. Two patient-beneficiaries, and the representative of a third, testified that statements made by the intake representative were incorrect. Moreover, the jury saw dozens of orders containing boilerplate statements about different patients. Accepting that these boilerplate statements were false with respect to some patient-beneficiaries, a jury could rationally reject those statements wholesale. And because the Government offered evidence that Dr. Mazumder signed the orders without investigating the boilerplate language, a

10

rational jury could further conclude that Defendant was willfully blind to the falsity of statements contained therein. Defendant's Rule 29 motion again falls short.

### 3. Evidence in Support of Counts Five through Seven

Defendant further argues that the Court should direct a verdict of acquittal with respect to Counts Five, Six, and Seven because the jury did not hear testimony from the patient-beneficiaries implicated in those Counts. (Doc. No. 98 at 9). Specifically, Defendant contends that "[t]here was no evidence that these patients did not have the medical condition(s) listed in the Orders or that they did not ask for the braces prescribed." (Id.).

But even if the patient-beneficiaries in Counts Five, Six, and Seven did have the medical conditions listed in the orders, a rational jury could conclude that Defendant had falsely claimed to have performed a medical assessment on the patient.[1] The orders at issue contain the same representations as the other orders signed by Dr. Mazumder. If a jury found that Defendant did not perform a medical examination on any patient for whom she signed an order, then that jury could rationally conclude that Defendant knew that all of the orders she signed were boilerplate and the truth of any statement attested to was mere coincidence. The Docusign records for Counts Five, Six, and Seven offer enough evidence for a rational jury to conclude that Dr. Mazumder never examined any of the patients in question, and that Dr. Mazumder's representations to the contrary were false. (Doc. No. 104 at 10–11); (Gov't Ex. 45–46, 49–50). Viewing the evidence in the light most favorable to the Government, Defendant's argument that Dr. Mazumder must be acquitted on Counts Five through Seven fails.

---

[1] In fact, the jury found Defendant guilty on Count Three despite the patient-beneficiary's testimony that he suffered from a condition that—Defendant argued—could have been treated with the brace she prescribed. The jury apparently recognized that Defendant could be culpable for false statements (e.g., claiming to be a patient's treating physician) despite the coincidental truth of certain statements contained in the orders.

11

### b. Motion for New Trial

A district court has broader authority to grant a motion for new trial than to direct a verdict of acquittal. (Doc. No. 98 at 26) (citing United States v. Robinson, 71 F. Supp. 9, 10 (D.D.C. 1947)). Unlike on a motion for judgment of acquittal, on a motion for new trial the Court can evaluate for itself the evidence and credibility of witnesses. United States v. Rafiekian, 68 F.4th 177, 186 (4th Cir. 2023). Even where the Government presents sufficient evidence for a reasonable jury to convict, a district court can grant a new trial if it "disagree[s] with the jurors' weighing of the evidence" in finding the defendant guilty. Rafiekian, 68 F.4th at 186 (quoting Tibbs v. Florida, 457 U.S. 31, 42 (1982)).

Even if the Court does not find that acquittal was the only proper verdict, Rafiekian, 68 F.4th at 186 (citing Tibbs, 457 U.S. at 42), Defendant argues that the Court should grant a new trial for the reasons raised in Defendant's motion for a judgment of acquittal. (Doc. No. 98 at 26). Defendant asks the Court—"sitting as a 'thirteenth juror'"—to grant a new trial based on the Court's own assessment of the evidence. Rafiekian, 68 F.4th at 186 (citing Tibbs, 457 U.S. at 42). But even if this Court were so inclined, "[m]erely believing that the case could have come out the other way is not enough to warrant a new trial." Rafiekian, 68 F.4th at 186. Instead, a new trial is only appropriate where "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985). That is not the case here. The Government presented sufficient evidence for a rational jury to conclude that Dr. Mazumder knowingly and willfully made materially false statements in connection with healthcare services. Defendant's omnibus alternative argument for a new trial falls short of the "demanding" standard required for this Court to usurp the jury. United States v. Millender, 970 F.3d 523, 532 (4th Cir. 2020)).

12

Besides re-hashing the arguments in her motion for judgment of acquittal, Defendant argues that a new trial is required due to three purported legal errors. The alleged errors are (1) admitting into evidence orders for Medicare beneficiaries not specifically identified in the Indictment, (2) excluding evidence that Defendant called a law firm, and (3) declining to offer Defendant's proposed curative instruction following an allegedly improper remark during the Government's closing argument. (Doc. No. 98). For Defendant's motion to prevail, she must show that these legal errors so tainted the proceedings that "the interest of justice" demands a new trial. See FED. R. CRIM. P. 33.

### i. Evidence Regarding Non-Indictment Medicare Beneficiaries

Defendant's omnibus motion in limine moved to exclude evidence and testimony concerning beneficiaries not named in the Superseding Indictment. (Doc. No. 62). Nevertheless, the Government introduced at trial orders, testimony, and summary charts concerning beneficiaries not specifically identified in the Indictment. Defendant alleges that because that evidence was not relevant to Counts Two through Seven, it constitutes improper and prejudicial evidence of uncharged acts and should have been excluded. (Doc. No. 98 at 27).

Evidence of uncharged acts is only admissible for limited purposes. United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989); FED. R. EVID. 404(b). Even where the evidence accords with an approved purpose, it should still be excluded where it fails the Rule 403 balancing test. Defendant's new trial motion renews the argument from her motion in limine: evidence concerning non-indictment beneficiaries is not offered pursuant to any approved purpose, and any probative value was outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, and the needless presentation of cumulative evidence. (Doc. No. 98 at 28) (citing Doc. No. 62 at 6–7). Specifically, Defendant contends there is "a substantial

13

likelihood that the jury improperly considered evidence" concerning uncharged acts in deciding whether to convict Dr. Mazumder on Counts Two through Seven.

The Government responds that the evidence regarding non-indictment beneficiaries is not properly classified as "uncharged acts." That's because—as Defendant appears to acknowledge (Doc. No. 98 at 28)—the evidence was admitted in support of the overarching scheme charged in Count One. (Doc. No. 104 at 20). The health care fraud scheme charged in Count One involved beneficiaries besides those specifically identified in Counts Two through Seven (false statements). The Government was not required to prove the health care fraud Counts exclusively through evidence related to the beneficiaries identified in the false statements Counts. See (Doc. No. 194 at 20). And because Defendant ordered durable medical equipment for every beneficiary on the Government's witness list during the period of the charged scheme, each beneficiary's testimony was admissible as substantive evidence of the charged scheme, and thus outside the scope of Rule 404(b). See (Doc. No. 194 at 20) (citing United States v. Bajoghli, 785 F.3d 957, 964 (4th Cir. 2015); United States v. Grimmond, 137 F.3d 823, 832 (4th Cir. 1998)). Finally, the Government points out that Defendant lacks support for her contention that the jury may have considered evidence related to unidentified Count One beneficiaries when deliberating on Counts Two through Seven. (Doc. No. 104 at 21). Because the evidence in question was outside the scope of Rule 404(b), and because Defendant fails to show that the jury improperly relied on evidence related to Count One in its decision to convict on Counts Two through Seven, the interests of justice do not require a new trial on this basis.

### i. Evidence that Defendant Called a Law Firm

Next, Defendant argues a new trial is in the interest of justice because the Court erroneously excluded evidence of Dr. Mazumder's attempts to "[o]btain [w]histleblower

14

[p]rotection." (Doc. No. 98 at 29). During its case-in-chief, Defendant called Ethan Slabosky, an attorney at Gibbons Law Group, an employment law firm. (Id. Ex. C at 287–88). Defendant called Mr. Slabosky to introduce two messages from his firm's third-party answering service. Both messages identified Dr. Mazumder as the caller, and the second specifically referenced a "whistleblower matter." (Doc. No. 98 Ex. M). The Court excluded the messages, as well as Mr. Slabosky's testimony, as inadmissible hearsay not subject to any exception. Defendant subsequently proffered the testimony of an investigator who had reviewed Dr. Mazumder's phone records and confirmed that she had called civil law firms during the relevant timeframe. The Court permitted the phone records to be admitted into evidence, but excluded any testimony that calls were made to a law firm because the Government would not have the opportunity to cross-examine Dr. Mazumder about the calls. (Doc. No. 98 at 31).

Defendant contends that the answering service messages are not hearsay and were thus improperly excluded. (Doc. No. 98 a 32). Hearsay is an out-of-court statement offered for the truth of the matter asserted. FED. R. EVID. 801(c). Where a statement is offered solely for the fact that it was made—as opposed to the veracity of the declarant's assertion—the statement is not offered for the truth of the matter asserted and thus not inadmissible hearsay. United States v. Cantu, 876 F.2d 1134 (5th Cir. 1989) (quoting United States v. Bobo, 586 F.2d 355 (5th Cir. 1978) (citing Advisory Committee Note to Rule 801(c)), cert. denied, 440 U.S. 976 (1979)). Defendant maintains that the messages were not offered to show that Dr. Mazumder inquired about whistleblower protection, but instead to show her lack of intent and knowledge as to the charged offenses. (Doc. No. 98 at 32). Now, as at trial, Defendant's argument is tenuous: "if the jury were not being asked to believe that Defendant did in fact contact a whistleblower attorney, then the statement is meaningless." (Doc. No. 104 at 22). Even accepting Defendant's hearsay

15

argument, the Court would properly have excluded the statements according to Rule 403. Whether the messages are probative at all is questionable (there are many reasons to call a lawyer: some negate mens rea and others evidence it), and the Government would clearly have been prejudiced by its inability to cross-examine Dr. Mazumder about the phone calls. The interests of justice do not require a new trial on this ground.

### i. Allegedly Improper Remarks at Closing Argument

Finally, Defendant asserts that a new trial is justified because the Court declined to offer Defendant's proposed instruction in response to an allegedly inappropriate argument made during the Government's closing argument. (Doc. No. 98 at 34). The Government maintains that the argument was not improper, and that in any event a new trial is not warranted because the Court struck the comment and gave a curative instruction (albeit not the one Defendant requested). (Doc. No. 104 at 22).

During closing argument, defense counsel argued that the Government had withheld discovery and did not show the jury certain exculpatory evidence. In response, the Government pointed out that Defendant could have subpoenaed any exculpatory evidence. Defendant objected. The Court sustained the objection, struck the statement, and gave a limiting instruction.

The Government maintains that the comment in question did not improperly shift the burden to Defendant. (Doc. No. 104 at 24). Citing case law from the Fifth, Seventh, Eight, Ninth, and Eleventh Circuits, the Government contends that where "the defense argues that the government failed to present certain evidence, it is not burden-shifting for the prosecution to argue in rebuttal that the defense also has subpoena power." (Doc. No. 104 at 24–25). The Government further argues that the comment was permitted under the "invited reply" rule articulated in United States v. Young. (Id. at 25) (citing 470 U.S. 1, 11 (1985)).

16

Even assuming the comment was improper, the Government maintains that it did not affect the fairness of the proceedings such that a new trial is required. In the Fourth Circuit, a prosecutor's improper remarks during closing justify a new trial only where they "so infect the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Lighty, 616 F.3d 321, 359 (4th Cir. 2010) (quoting United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998)). The Circuit has articulated a six-factor test to determine whether such denial of due process has occurred. That inquiry considers

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; [ ] (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters[;] ... (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel[;] and (6) whether curative instructions were given to the jury.

United States v. Lopez, 860 F.3d 201, 215 (4th Cir. 2017). "[G]reat latitude is accorded counsel in presenting closing argument to a jury." United States v. Ollivierre, 378 F.3d 412, 418 (4th Cir. 2004), rev'd on other grounds, 543 U.S. 1112 (2005) (citation omitted).

Even assuming the prosecution's remark was improper, the Court finds that it did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." Lighty, 616 F.3d at 359. First, the prosecutor's remark did not tend to mislead the jury or prejudice Defendant—as a factual matter, it is true that Defendant has the subpoena power. Second, the remarks were isolated. Defendant's attempt to tie the prosecutor's comment to earlier cross-examinations of defense witnesses is unavailing. Defense counsel spoke up as soon as the objectionable comment was made, and the Court sustained the objection. Third, as illustrated in the Court's analysis of Defendant's motion for judgement of acquittal, the evidence of Dr. Mazumder's guilt was sufficient absent the prosecutor's remark in closing. Fourth,

Defendant does not even attempt to argue that the prosecutor's remark was intended to divert the jury's attention. Fifth, the Government convincingly shows that the comment in question was made in response to defense counsel's remarks in closing argument. Sixth and finally, the Court gave a curative instruction to the jury. Defendant—inexplicably applying the Seventh Circuit's test for whether an improper closing comment deprived the defendant of a fair trial—acknowledges that the curative instruction was given, but maintains that it was inadequate. The Court respectfully disagrees. The interests of justice do not require a new trial on this basis.

## ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion for judgment of acquittal and for new trial (Doc. No. 97) are **DENIED**.

Max O. Cogburn Jr
United States District Judge

Signed: January 23, 2024