UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 3:22-cr-165-MOC |
| v. | ) | |
| | ) | **RESPONSE IN OPPOSITION TO** |
| SUDIPTA MAZUMDER | ) | **RENEWED MOTION FOR NEW** |
| | ) | **TRIAL** |
| _____ | ) | |

The United States of America, by and through Russ Ferguson, United States Attorney for

the Western District of North Carolina, files this response in opposition to Defendant Sudipta

Mazumder's renewed motion for a new trial. (Renewed Mot. New Trial, Doc. 132.) For the reasons

set forth below, the Court should deny the motion.

## **PROCEDURAL HISTORY**

On August 16, 2022, Defendant was charged in an eight-count Superseding Bill of

Indictment with two counts of health care fraud, in violation of 18 U.S.C. § 1347, and six counts

of making false statements relating to health care matters, in violation of 18 U.S.C. § 1035. (Sup'r.

Indictment, Doc. 15.) On September 26, 2023, Defendant was convicted by a jury of the six false

statement counts and acquitted of the two health care fraud counts. (Verdict, Doc. 92.)

Defendant filed a motion for a judgment of acquittal or for a new trial on October 10, 2023.

(Mot. Judg. Acquittal, Doc. 97.) Among other things, Defendant argued that a new trial was

warranted because the Court erred in excluding evidence related to Defendant's alleged efforts to

become a whistleblower and because the Government failed to establish that Defendant falsely

represented that the orthotics at issue in the case were medically necessary. (Memo Supp. Mot.

Judg. Acquittal, Doc. 98 at pp. 14-18, 29-33.) On January 23, 2024, after a hearing, the Court

denied Defendant's motion for judgment of acquittal. (Order Den. Mot. Judg. Acquittal, Doc. 110.)

Defendant filed a renewed motion for a new trial on January 19, 2026. (Renewed Mot. New Trial, Doc. 132.)

## LEGAL STANDARD

Rule 33 of the Federal Rules of Criminal Procedure provides that the Court may grant a new trial "if the interest of justice so requires." Rule 33, Fed. R. Crim. P. A new trial may be granted "where the government *has* presented sufficient evidence for a reasonable jury to convict, but the court nevertheless disagree[s] with the jurors' weighing of the evidence in finding the defendant guilty." *United States v. Rafiekian*, 68 F.4th 177, 186 (4th Cir. 2023) (citation and quotation omitted and emphasis in original). "So in determining whether a new trial is warranted, the district court—sit[ting] as a thirteenth juror—conducts its own assessment of the evidence, unconstrained by any requirement to construe the evidence in the government's favor." *Id.* (citations and quotation omitted). "Since determining witness credibility and weighing conflicting evidence are the responsibility of the factfinder, the standard for jettisoning a jury verdict in favor of a new trial is demanding[.]" *Id.* at 186–87 (citations and quotations omitted).

## ARGUMENT

**I.     Defendant's motion should be denied because it is untimely.**

Rule 33 of the Federal Rules of Criminal Procedure provides that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Rule 33(b)(2), Fed. R. Crim. P. Newly asserted legal arguments do not constitute newly discovered evidence. *See United States v. Council*, 77 F.4th 240, 264 (4th Cir. 2023) (affirming denial of untimely Rule 33 motion, stating that motion based on newly enacted statute was not based on newly discovered evidence). Stylizing an untimely

2

motion as a "renewed" motion does not cause it to relate back to a timely-filed initial motion for a new trial. *United States v. Bramlett*, 116 F.3d 1403, 1406 (11th Cir. 1997). For this 14-day period to be extended, the movant must show good cause for its "excusable neglect." Rule 45(b)(1)(B), Fed. R. Crim. P.

Defendant was convicted on September 26, 2023. (Verdict, Doc. 92.) Because Defendant's motion does not offer newly discovered evidence, her deadline to file a motion for new trial under Rule 33 was October 10, 2023. Defendant did in fact timely file a motion for acquittal and for new trial on that date, (Mot. Judg. Acquittal, Doc. 97,) which was denied in January 2024. (Order Den. Mot. Judg. Acquittal, Doc. 110.) Defendant's renewed motion was filed nearly two years later on January 19, 2026. (Renewed Mot. New Trial, Doc. 132.) Defendant's motion is thus untimely, and Defendant does not present any circumstances suggesting that her filing was delayed by excusable neglect. Defendant's motion should be denied.

## II. Defendant is not entitled to a new trial because the jury was adequately instructed regarding the *mens rea* requirement for the false statement counts.

### A. The Court's willfulness instruction was sufficient and correct, and the Court was not required to charge the jury on good faith a second time.

Defendant first argues that the failure to instruct the jury on good faith specifically in connection with the false statement counts—even though the Court had already instructed the jury on good faith minutes earlier—renders the verdict unfair and necessitates a new trial. (Memo Supp. Renewed Mot. New Trial, Doc. 132-1 at p. 9.) Defendant's argument fails because the willfulness and good faith instructions given by the Court fully covered Defendant's defense, and the failure to reincorporate the good faith instruction by reference a second time or give a second good faith

3

instruction did not impair Defendant's defense—particularly since the jury charge the Court gave was the exact one Defendant proposed. A new trial is not warranted on this basis.

A district court's decision to not give an instruction requested by the defendant "amounts to reversible error only if the proffered instruction: (1) was correct, (2) was not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instruction seriously impaired the defendant's defense." *United States v. Hager*, 721 F.3d 167, 184 (4th Cir. 2013). "An additional instruction on good faith [is] unnecessary," so long as the district court "gives adequate instructions on specific intent." *United States v. Fowler*, 932 F.2d 306, 317 (4th Cir. 1991) (citing *United States v. Pomponio*, 429 U.S. 10, 13 (1976)).

In the portion of the jury instructions applicable to the health care fraud scheme counts, the Court instructed the jury on willfulness as follows:

> A person acts willfully if she acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. The person need not be aware of the specific law or rule that her conduct may be violating. But she must act with the intent to do something that the law forbids.
>
> A willful act is one undertaken with a bad purpose. In other words, in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that her conduct was unlawful.

(Trial Tr., Doc. 123 at p. 139 l. 22 – p. 140 l. 3.) This willfulness instruction is the exact instruction approved by the Supreme Court. *Bryan v. United States*, 524 U.S. 184, 190 (1998).

The Court then separately instructed the jury on Defendant's good faith:

> Good faith is a complete defense, because good faith on the part of the defendant is inconsistent with intent to defraud and/or willfulness that is an essential element of the charge in the

4

indictment. A person who acts on a belief or on an opinion honestly held is not punishable under the law merely because that honest belief turns out to be incorrect or wrong. The burden is on the Government to prove fraudulent intent and the lack of good faith beyond a reasonable doubt.

The defendant's conduct would not be willful if you find that the defendant acted in accordance with a good faith misunderstanding of the law. The defendant's views need not be legally correct, just as long as the defendant honestly and in good faith really and truly believed and acted upon them.

(*Id.* at p. 142 ll. 17-22.) This was the exact charge proposed by Defendant. (Def Prop. Jury Instr., Doc. 78 at p. 53.)

In the next section of the jury instructions applicable to the false statement counts, the Court incorporated by reference the previously-charged definitions of "scheme", "material, "false representation," "knowingly," "willfully," and "health care benefit program." (Trial Tr., Doc. 123 at p. 147 ll. 9-12.) The Court did not incorporate by reference the instruction on good faith in that section of the instructions. (*Id.*) This also mirrored the instructions Defendant proposed; Defendant proposed that the Court incorporate by reference the definition of willfully, but did not propose that the Court incorporate by reference the definition of good faith in the false statement section. (Def Prop. Jury Instr., Doc. 78 at p. 63.) Nor did Defendant propose a different good faith instruction specific to the false statement counts.

The instructions were not erroneous primarily because the instructions given by the Court adequately defined the required *mens rea* such that a separate instruction on good faith was not required. *United States v. Fowler*, 932 F.2d 306, 317 (4th Cir. 1991); *see also United States v. Farley*, No. 3:23CR68-2, 2025 WL 1439443, at *4 (E.D. Va. May 19, 2025) (finding *Fowler* is still good law). Regardless, the charged good faith instruction expressly stated that a defendant's

5

good faith can negate a finding of fraudulent intent or willfulness, sufficiently covering Defendant's intent defense. There is no requirement under Fourth Circuit law that the instructions take a certain form or the Court instruct on good faith a second time.

Defendant's argument that the Court should have delivered a second good faith instruction rests on *United States v. Singh*, 147 F.4th 652 (6th Cir. 2025). In *Singh*, however, the district court did not instruct the jury on *Bryan* willfulness in the first instance. Instead, the only charge given by the district court relevant to the *mens rea* requirement was: "An act is done knowingly and willfully if it is done voluntarily and intentionally, and not because of mistake or some other innocent reason." *United States v. Singh*, 3:22-cr-228 (N.D. Ohio, Doc. No. 88 at pp. 30-31.) The Sixth Circuit found that the instructions did not comport with *Bryan* and failed to inform the jury that the government was required to prove that Singh "'acted with knowledge that [her] conduct was unlawful.'" *Singh* at 658 (quoting *Bryan v. United States*, 524 U.S. 184, 192 (1998)).[1]

The Sixth Circuit's decision in *Singh* is thus inapposite to this case. Unlike the district court in *Singh*, this Court adequately instructed the jury on both *Bryan* willfulness and good faith sufficient to explain Defendant's intent defense. The Court was not required to incorporate by reference the good faith instruction a second time, and doing so would have done nothing to aid the jury's understanding of Defendant's defense. A new trial is not required.

**B.     Defendant is not entitled to relief because she invited the alleged error.**

Even if the Court had erred by failing to incorporate by reference the good faith instruction a second time, Defendant invited the alleged error by proposing the exact jury instructions about

---

[1] Importantly, the Sixth Circuit did not reverse on this basis and acknowledged that it would have had to apply the plain-error standard of review and "grapple with" the invited-error doctrine before reversing on this basis. *Singh* at 659–60.

which she now complains. Defendant cannot claim that the trial was unfair when the Court issued the exact charge she requested.

"It has long been recognized that 'a court can not be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request.'" *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994) (quoting *Shields v. United States*, 273 U.S. 583, 586 (1927)). Although an appellate doctrine applicable to plain error review, the invited-error doctrine prohibits a defendant's challenge to jury instructions to which she had originally stipulated because an invited error cannot be viewed as one that affects the fairness or integrity of the proceeding. *Id.*; *United States v. Lespier*, 725 F.3d 437, 450 (4th Cir. 2013).

Because the Court gave the exact instructions that Defendant requested, the trial cannot have been unfair, and Defendant will not be entitled to relief on appeal on this basis. Accordingly, the Court should deny Defendant's motion for a new trial.

### III. A new trial is not warranted because the Court correctly excluded evidence related to Defendant purportedly attempting to become a whistleblower on hearsay and relevance grounds.

#### A. The evidence Defendant sought to elicit did not meet the present sense impression exception to the rule against hearsay.

Defendant next argues that the trial was unfair because the Court excluded evidence containing multiple layers of hearsay and failed to find that it was admissible as Defendant's present sense impression, even though Defendant did not argue for its admission on this basis at trial. The Court's ruling was not erroneous because the evidence was hearsay not subject to any exception, and its exclusion does not justify a new trial.

Under Rule 803(1) of the Federal Rules of Evidence, a hearsay statement is not prohibited from admission by the rule against hearsay if the statement "describe[es] or explain[s] an event or

7

condition, made while or immediately after the declarant perceived it." Rule 803(1), Fed. R. Evid. Three requirements must be satisfied for the present sense impression exception to be applied: "subject matter, perception, and time." *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 323 (4th Cir. 1982). In other words, the witness must have personally perceived the subject matter of the statement, the subject matter must relate to a discrete event or condition, and the hearsay statement must have been memorialized "immediately" after the event. *Id.*; *see also United States v. Contreras*, 149 F.4th 349, 372 (4th Cir. 2025) (finding the present sense impression applied where "[t]he witness 1) was personally present for the conversation with Velasco Barrera; 2) provided a factual description of the conversation; and 3) memorialized the conversation as quickly as he could after he returned to his cell.").

At trial, Defendant called Ethan Slabosky, an attorney at Gibbons Law Group, to testify. Defendant intended to elicit testimony from Slabosky that a second person employed by his law firm received a note written by a third-party voicemail service. In that note, the unknown third party wrote down his or her impression of what Defendant said to him or her in a telephonic conversation at some point in time after Defendant had stopped working for Barton. Defendant argued that the testimony was not hearsay because it was not offered for the truth of the matter asserted therein. (Trial Tr., Doc. 120 at p. 6 ll. 3-21.) The Court excluded the evidence as hearsay. (*See id.*) Defendant did not proffer the disputed evidence, so the subject matter of the conversation between Defendant and the third party voicemail service was not part of the trial record.

Defendant next informed the Court that she planned to offer the testimony of an investigator who had reviewed Defendant's phone records. (Trial Tr., Doc. 120 at p. 209 ll. 12-19.) The investigator would have testified that he researched the phone numbers that Defendant

8

had dialed during the relevant timeframe and determined that some belonged to civil law firms. (*Id.*) The Court forecast that it would exclude the testimony and Defendant withdrew the witness. (*Id.* at p. 214 ll. 20-21.)

In her motion for acquittal, Defendant proffered the substance of the messages for the first time. The motion for acquittal states that, in short, the third party's notes reflect that Defendant sought assistance for "a medicare issue" or "a whistleblower matter." (Memo Supp. Mot. Judg. Acquittal, Doc. 98 at p. 29.) In that motion, Defendant again argued that the exclusion of these messages was improper because "they were not offered for the truth of the matter asserted—that Dr. Mazumder inquired about whistleblower protection—but instead, to show her lack of intent and/or knowledge as to the charged offenses." (*Id.* at p. 32.)

The Court rejected the argument, holding that the messages were properly excluded because they were offered for the truth of the matter asserted. The Court stated, "if the jury were not being asked to believe that Defendant did in fact contact a whistleblower attorney, then the statement is meaningless." (Order Den. Mot. Acquittal, Doc. No. 110 at p. 15.) The Court alternatively noted that it would have excluded the statements under Rule 403, stating that "there are many reasons to call a lawyer: some negate mens rea and others evidence it[,]", and the Government's inability to cross-examine the declarant of the hearsay statements would have prejudiced it. (*Id.* at p. 16.)

Defendant raises the issue again in her second motion for a new trial. This time, however, Defendant argues for the first time that the Court erred in excluding the evidence because it was hearsay subject to the present sense impression exception, relying again on *Singh*.

9

As an initial matter, Defendant's argument is unpersuasive because the Court could not have erred, and the trial cannot have been unfair, when Defendant did not put before the Court the evidence or argument that it constituted present sense impressions. The messages were introduced for the first time when they were attached to Defendant's motion for judgment of acquittal, and Defendant has not argued that they were admissible as present sense impressions until the instant motion. Accordingly, Defendant's belated argument that their exclusion rendered the trial unfair is unpersuasive.

Regardless, *Singh* does not compel a different conclusion, Defendant's argument that the evidence instead should have been admitted as present sense impressions still fails. In *Singh*, the Sixth Circuit held that the district court erred in excluding testimony from an insurance investigator regarding a phone call she had with the defendant. That investigator would have testified that Dr. Singh "said she signs into a portal where she gets documents for patients who she believes have been evaluated by another provider" and that "Dr. Singh was under the impression the patients were actually examined because she said the documents appeared to be legitimate." *United States v. Singh*, 147 F.4th 652, 660 (6th Cir. 2025). The Sixth Circuit noted that the statements met the criteria to constitute present sense impressions: the investigator personally spoke to Dr. Singh; the investigator made notes of the conversation within 20 minutes of its conclusion; the conversation related to Dr. Singh's subjective mental state; the conversation occurred during the scheme and therefore related to Dr. Singh's then-present intent; and the investigator was the one who was called to testify about the conversation. The Sixth Circuit held that these statements were hearsay but met the exception for present-sense impressions and should have been admitted.

*Singh* is inapposite to this case for several reasons.

10

First, the present-sense impressions offered in *Singh* were factually distinguishable from the evidence at issue in this case. Here, Defendant asserts that she left voicemails seeking assistance for "a medicare issue" or "a whistleblower matter." (Memo Supp. Mot. Judg. Acquittal, Doc. 98 at p. 29.) Unlike the detailed statements in *Singh*, the messages here do not reflect Defendant's substantive impressions of Barton's operations, nor do they shed light on Defendant's mental state.

Second, the form of the statements offered in *Singh* materially differs from the testimony Defendant offered. In *Singh*, the defense attempted to offer the testimony of someone who directly and contemporaneously spoke to Dr. Singh about her then-present, substantive understanding. Here, Defendant offered the testimony of Ethan Slabosky, even though he never personally spoke to Defendant. Slabosky's testimony—that another employee of his law firm received notes from a third-party voicemail service about messages left by Defendant—would have been so far attenuated from Defendant's purported statements that it could not meet the perception requirement. And it would have had at least two additional layers of hearsay that could not meet a Rule 803 exception.

Third, the timing of the hearsay statements offered in *Singh*, and how they relate to the offense at issue, differ from those at issue in this case. *Singh* was convicted of health care fraud in violation of 18 U.S.C. § 1347. *Singh* at 656. A scheme to defraud is a continuing offense. *Id.* at 661. Dr. Singh's statements to an investigator about her present understanding of the scheme, made during the scheme, thus could temporally constitute present sense impressions. *Id.*

On the other hand, Defendant was acquitted of health care fraud in violation of 18 U.S.C. § 1347 but convicted of false statements in violation of 18 U.S.C. § 1035. False statements are

11

discrete acts, not continuing offenses. *See United States v. Treacy*, No. 5:13CR00018, 2014 WL 12698499, at *4 (W.D. Va. Jan. 28, 2014) (finding that false statements under Section 1001 are not continuing offenses); *see generally United States v. Blizzard*, 27 F.3d 100, 103 (4th Cir. 1994) (stating that courts should evaluate whether the gravamen of the offense demonstrates that Congress intended for it to be continuing, such as continued possession of stolen government property). Defendant's statements to a third party made months *after* she made the false statements at issue—and further, after she had concluded her role in the scheme—cannot constitute present sense impressions. Whether Defendant contacted a law firm after the scheme had ended does not explain Defendant's intent at the time she made false statements months earlier.

Defendant also cannot show any prejudice from the exclusion of the messages. The jury saw significant evidence of Defendant's contemporaneous beliefs about Barton's operations and lack of fraudulent intent, including numerous emails and other self-serving hearsay introduced through Joey Lendaro. Indeed, the jury concluded that Defendant lacked fraudulent intent, as she was acquitted of the health care fraud scheme count. The exclusion of cumulative evidence supporting the issue on which Defendant prevailed could not have prejudiced her.

At its crux, there is no doubt that Defendant's desired evidence could have been admissible had it been properly offered in a substantive, non-hearsay form. Defendant could have testified that she contacted a whistleblower attorney, and that testimony would not have been hearsay. Alternatively, if an attorney or investigator spoke directly with Defendant regarding her contemporaneous understanding of how Barton's scheme operated, he or she may have been able to testify regarding Defendant's present sense impressions. But that is not the evidence Defendant sought to offer.

Acknowledging this point, Defendant argues that the evidentiary rules "do[] not allow the Government" to force Defendant to choose between invoking her right not to testify and "putting on a complete defense." (Memo Supp. Renewed Mot. New Trial, Doc. 132-1 at pp. 19-20.) Defendant cites no support for the claim that defendants are allowed to disregard the rules of evidence if the introduction of the otherwise inadmissible evidence would help them avoid testifying. To the contrary, it is well-settled that a defendant cannot introduce her own self-serving out-of-court statements for the truth of the matter asserted unless a hearsay exception applies. *United States v. Mitchell*, No. 3:09CR186, 2009 WL 5201853, at *3 (W.D.N.C. Dec. 22, 2009). In *every* trial where the defendant's intent is the key element, defendants must weigh whether there is evidence of her state of mind that is only admissible if she testifies. And Defendant disregards that she could have attempted to elicit the testimony of a person who substantively spoke to Defendant about her present sense impressions. The exclusion of the challenged evidence does not present a constitutional issue or warrant a new trial.

### B. The Court did not err in alternatively finding that the anticipated testimony was more prejudicial than probative under Rule 403.

Defendant also argues that the Court's alternative basis for denying the admission of the evidence on Rule 403 grounds was erroneous. Defendant argues that, "[i]f Dr. Mazumder was allowed to introduce the phone records, the prosecution could have cross-examined the attorney on whether Dr. Mazumder entered an attorney-client relationship, paid a retainer, or took any formal steps to formalize a whistleblower engagement." (*Id.* at p. 19.) Defendant's problem, however, is that the phone records on their own do not support the inference that Defendant wanted to suggest to the jury—Defendant lacked fraudulent intent earlier in the scheme. By seeking to introduce the fact that she called a law firm but not the substance of what she said to a lawyer (if

13

anything), Defendant wanted the jury to fill in the blanks and speculate about why she called a law firm. That is exactly what Rule 403 prohibits.

As the Court noted at trial and in its order denying the motion for acquittal, Defendant could have called a law firm for numerous reasons; it is equally possible that Defendant, after learning of the investigation, called the law firm to get ahead of it. (Order Den. Mot. Judg. Acquittal, Doc. 110 at pp. 15-16.) That shows exactly why only a participant in the substantive conversation with Defendant could appropriately testify to any statements she made about her state of mind without devolving into conjecture. The Court correctly prevented a mini-trial into the various reasons why Defendant may have called a law firm when it would only have served to mislead the jury and confuse the issues. And again, because Defendant was acquitted on the health care fraud scheme count, Defendant cannot have suffered prejudice from the exclusion of this evidence on Rule 403 grounds.

## IV.   The "uncertain regulatory environment" does not warrant a new trial.

Defendant next argues that the complexity of the Medicare system and the "uncertain regulatory environment" during the COVID-19 pandemic makes it "difficult[]" to ascribe to her the "requisite intent to violate the law." (Memo Supp. Renewed Mot. New Trial, Doc. 132-1 at pp. 16-18.) Defendant's argument falls apart under scrutiny.

As an initial matter, the only purported complexity that Defendant identifies is that CMS rules requiring face-to-face interactions with patients in certain scenarios were relaxed during the COVID-19 pandemic. (*Id.* at p. 17.) But as Defendant acknowledges, only three of the six false statements occurred after the rules were relaxed. (*Id.* at p. 18.) And the evidence introduced at trial established that the relaxed rules did not apply to orders for durable medical equipment. (Trial Tr.,

14

Doc. 117 at p. 120 ll. 13-15.) Even if the rules about face-to-face interactions during the COVID-19 pandemic were complicated, they cannot justify Defendant's misrepresentations prior to the pandemic or her misrepresentations about matters other than whether the examination was in-person or virtual (or occurred at all).

Defendant's argument, however, fundamentally discounts the Government's theory on the false statement counts. Defendant was not charged with examining the beneficiaries virtually rather than in-person, with failing to follow CMS rulemaking, or with failing to meet the standard of care prescribed by the North Carolina medical board. This case is not about a mistake in judgment or medical malpractice. To the contrary, the evidence before the jury established that Defendant made no effort to examine the beneficiaries and exercised no medical judgment whatsoever—but falsely represented to Medicare that she did. Defendant effectively conceded this point at trial, instead arguing throughout that she believed that she did not need to take any action to examine the patients because she thought her role was limited to chart review.

Defendant made the same arguments about North Carolina medical board rules to the jury that she makes in her motion for new trial. The verdict makes clear that the jury credited Defendant's intent evidence yet still found that she willfully made false statements. The Court need not disturb that verdict merely because some of Medicare's rules were complicated.

## V. The Government did not elicit improper testimony regarding medical necessity.

In her motion for acquittal, Defendant argued that the Government failed to prove that the orders were not medically necessary, noting that Special Agent Kilpatrick was the only witness to "directly opined as to medical necessity." (Mot. Judg. Acquittal, Doc. 98 at p. 16.) The Court rejected the argument, finding that a rational jury could credit the testimony of the beneficiaries

15

that Defendant did not examine her, in addition to Special Agent Kilpatrick's testimony, over the testimony of Defendant's expert. (Order Den. Mot. Judg. Acquittal, Doc. 110 at p. 9.) The Court also noted that a rational jury could rely on the DocuSign timestamps or the facially-suspicious orders themselves without further testimony to conclude that Defendant made no medical necessity determination whatsoever. (*Id.*)

Defendant modifies her argument, again following the *Singh* decision, to insist that a new trial is required because the Government did not offer expert testimony regarding medical necessity and because Special Agent Kilpatrick purportedly opined on whether the DME was medically necessary. (Memo Supp. Renewed Mot. New Trial, Doc. 132-1 at pp. 20-21.) Defendant's argument again rehashes arguments already rejected by the Court in denying her motion for acquittal, and both subparts of her argument fail.

### A. Expert testimony is not required to sustain a conviction for health care fraud.

Defendant first argues that the Government "should have" called an expert witness to conduct a claim-by-claim medical necessity determination. (*Id.* at p. 21.) Although there is no legal requirement that the Government present expert testimony about the rules regarding medical necessity for a jury to find that Defendant's statements were false, it still sufficiently did so in this case.

Defendant does not identify a basis for a categorical rule that expert testimony is required to support a federal criminal conviction. "Doing so would be at odds with the jury's considerable discretion to weigh evidence, both direct and circumstantial, that may prove or disprove an element of the offense." *United States v. Sanjar*, 876 F.3d 725, 745 (5th Cir. 2017). When there are strong indicia of fraud, such as failing to examine patients or falsifying medical charts, a jury can easily

16

find that fraud was committed without the need for expert testimony. When a doctor claims to have examined a patient in a particular manner when she could not possibly have done so—such as by representing that she performed a physical manipulation of the knee when she did not examine the patient at all—no expert testimony is needed to prove fraud occurred.

It is true that medical experts may be necessary to explain highly technical aspects of when a procedure may be appropriate. *Id.* (discussing how expert testimony may be necessary in a civil medical malpractice case). But this is not such a case. The evidence made it plainly apparent that Defendant's representations were false; as the Court noted, the testimony of the beneficiaries and the orders on their face could be sufficient for a rational jury to determine that Defendant had not made any determination of medical necessity because she believed she was doing chart review. (Order Den. Mot. Judg. Acquittal, Doc. 110 at p. 9.) Expert testimony was not required.

In *Singh*, the district court ruled on a motion *in limine* that a lay witness could testify that, "if Singh ordered DME without ever examining the patients herself, then the DME was not medically necessary." *United States v. Singh*, 147 F.4th 652, 662 (6th Cir. 2025). The Sixth Circuit held that the district court abused its discretion in so ruling, noting that there was no evidence introduced at trial of "any statute or Medicare regulation that bars a provider from determining if DME is medically necessary based on a written record (such as x-rays or notes from another provider who has examined the patient)." *Id.*

*Singh* fails to justify Defendant's argument for a new trial. Although the Sixth Circuit found the lay witness testimony to be improper, it did not impose a categorical rule requiring expert testimony to sustain a health care fraud conviction. And even if it did, there is no such analogous requirement under Fourth Circuit law. Regardless, the Government in this case introduced the type

17

of expert testimony regarding CMS regulations and prescribing practices that the Sixth Circuit found to be lacking in *Singh*, and a rational jury could rely on this testimony to conclude that Defendant's representations that she determined the orthotics to be medically necessary were false.

Stephen Quindoza was qualified as an expert regarding Medicare regulations. (Trial Tr., Doc. 117 at p. 52.) Among other things, Mr. Quindoza testified that Medicare's claims submission rules require that the provider who is treating the beneficiary for his or her current condition be the one who determines that the orthotic is medically necessary. (*Id.* at p. 74 ll. 4-20.) He testified that Medicare would not cover an orthotic ordered without an examination by the treating provider. (*Id.* at p. 76 ll. 7-19.) He also testified that, under Medicare rules, a treating provider could rely on a written order prepared by another provider if she has knowledge of the treatment and the rendering provider. (*Id.* at p. 117 l. 2 – p. 118 l. 1.) Sienna Newman was qualified as an expert and testified about the treating physician's role in examining the patient and ordering orthoses. (*Id.* at p. 284.) A rational jury could rely on this expert testimony to conclude that a provider's statement that she has a prescriber-patient relationship with and treated an unknown beneficiary, when there is no evidence that the treatment occurred, is materially false and was made for the purpose of deceiving Medicare into paying a claim that it otherwise would not have paid.

Furthermore, Defendant's own expert directly testified regarding medical necessity. Dr. Weil found the duplicative statements across the template orders, as well as the context surrounding their delivery, to raise concern. (Trial Tr., Doc. 120 at pp. 125 ll. 6-10.) Dr. Weil testified that he would have contacted the beneficiary to determine whether the information contained in the orders was correct, requested additional information from Expansion Media, and ultimately re-evaluated his relationship with Expansion Media because of his suspicions. (*Id.* at p.

123 l. 15 – p. 124 l. 24.) This testimony also supports the jury finding that the medical necessity representation was false.

Furthermore, Defendant's convictions would still stand if even the medical necessity representations were disregarded because the orders Defendant signed were replete with numerous other falsities that simply do not require expert testimony to understand. *See Sanjar* at 745 (noting that health care fraud convictions would stand even if a categorical rule requiring expert testimony to prove medical necessity existed, as medical necessity was only one of the theories of fraud underlying the charge). On each order, Defendant represented, among other things, that: (1) she had treated a patient, (2) the patient had a particular medical condition, (3) the beneficiary inquired about utilizing orthotic bracing and complained of pain; (4) she had a valid prescriber-patient relationship with the beneficiary; (5) the beneficiary had certain therapeutic objectives; (5) the beneficiary needed the orthotic for 99 months/lifetime; (6) the benefits of the orthotic and information to schedule a follow-up appointment were explained to the beneficiary; and (7) as to certain knee orthotic orders, that physical manipulation tests had been performed and the results were positive. Contrary to these representations, the testifying beneficiaries testified that Defendant did not treat them. (*See, e.g*, Trial Tr., Doc. 117 at p. 223 ll. 10-15.) Some of the listed medical conditions were not accurate. (*Id.* at p. 225 l. 21 – p. 226 l. 11.) The beneficiaries did not request the braces. (*Id.* at p. 240 l. 20 – p. 241 l. 6.) The documentary evidence, corroborated by beneficiary testimony, is sufficient to establish that those statements were false without the need for an expert to opine whether any particular claim was medically necessary

.

**B.** **Special Agent Kilpatrick defended the thoroughness of the case on cross-examination and did not improperly opine about medical necessity.**

Defendant also argues that the Government impermissibly introduced expert witness testimony through a lay witness, again relying on *Singh*. The cases are factually distinguishable, and a new trial is not warranted on this basis.

Defendant takes issue with only one statement by Special Agent Kilpatrick. (Memo Supp. Renewed Mot. New Trial, Doc. 132-1 at p. 21.) However, the context of this testimony shows that Special Agent Kilpatrick did not opine about medical necessity and instead defended the completeness of the investigation and trial presentation by explaining why the Government did not introduce additional emails Defendant sent:

> Q. Well, somewhere in what you showed today. But you didn't show the jury any e-mails where she wanted to – where Dr. Mazumder is telling Ms. Floyd that she can't get ahold of some of the patients.
> A. No, I don't think we showed any e-mails like that.
> . . .
> Q. As the lead agent in this case, don't you think it's important if you're charging somebody with fraud -- I guess it's a paper chart case; right? That's what we're talking about in very rudimentary terms; right? Is that a yes?
> A. I don't understand what you're asking.
> Q. Okay. You understand -- summing up what you're accusing Dr. Mazumder of is that she was selling her signature for prescriptions to be billed to Medicare; right?
> A. She was signing orders that were medically unnecessary to be billed to Medicare is a true statement.
>
> . . .
> Q. You're also aware of e-mails where Dr. Mazumder complains that some of these patients are saying they don't want these braces; right?
> A. Yes.
> Q. But you didn't show the jury those e-mails; right?
> A. It doesn't matter if the patients wanted it. It doesn't matter if she talked to the patients. At the end of the day signing the order and

20

> saying it's medically necessary and you didn't perform an exam is
> the problem here.
> Q. My question is you didn't do that.

(Trial Tr., Doc. 119 at p.163 l. 8 – p. 166 l. 14.) Defendant cannot complain that the lead case agent explained the case theory after directly asking her "what you're accusing Dr. Mazumder of." The improper lay witness testimony in *Singh* is thus distinguishable, and Defendant is not entitled to a new trial on this basis.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's renewed motion for a new trial.

Respectfully submitted on February 2, 2026.

<div style="margin-left:40%">

RUSS FERGUSON
UNITED STATES ATTORNEY

<u>/s/</u> **Graham Billings**
NC Bar Number 55972

<u>/s/</u> **Katherine Armstrong**
NC Bar Number 36305

Assistant United States Attorneys
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: 704.344.6222

</div>

## CERTIFICATION

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted on February 2, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY


/s Graham R. Billings
Graham R. Billings
Assistant United States Attorney
NC Bar No. 55972
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, NC 28202
Telephone: 704-338-3137
Facsimile: 704-344-6629
E-mail: graham.billings@usdoj.gov

22